UNITED STATES BANKRUPTCY COURT                    FOR PUBLICATION

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                :          Chapter 11

FOOTSTAR, INC., et al.,               :          Case No. 04 B 22350 (ASH)

        Debtors.                  :          (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**A P P E A R A N C E S :**

**WEIL, GOTSHAL & MANGES LLP**
**Attorneys for Debtors**
**By:**   **Paul M. Basta, Esq.**
       **Martin J. Bienenstock, Esq.**
       **Sara C. Temes, Esq.**
**767 Fifth Avenue**
**New York, New York 10153**

**WACHTELL, LIPTON, ROSEN & KATZ**
**Attorneys for Kmart Corporation**
**By:**   **Robert B. Mazur, Esq.**
       **Amy R. Wolf, Esq.**
**51 West 52 Street**
**New York, New York 10019**

**KRONISH LIEB WEINER & HELLMAN LLP**
**Attorneys for the Official Committee of Unsecured Creditors**
**By:**   **Richard S. Kanowitz, Esq.**
**1114 Avenue of the Americas**
**New York, New York 10036**

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
**Attorneys for the Official Committee of Equity Security Holders**
**By:**   **Matthew J. Williams, Esq.**
       **Erin Eliasen, Esq.**
**919 Third Avenue**
**New York, New York 10022**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

### DECISION ON CROSS-MOTION BASED ON SECTION 365(e)(2)

      The debtors moved to assume their executory contracts with Kmart Corporation

("Kmart") pursuant to Section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a). Kmart opposed the

motion on several legal and factual grounds, and also cross-moved for relief from the automatic stay to terminate the executory contracts under an ipso facto termination clause relying on Section 365(e)(2) of the Code. This Court issued a combined decision on February 16, 2005 as supplemented on March 31, 2005 (collectively, the "Section 365(c)(1) Decision"), *In re Footstar, Inc.*, --- B.R. ---, 2005 WL 563725 (Bankr. S.D.N.Y. Feb. 16, 2005), overruling Kmart's legal objection to debtors' motion to assume based on Section 365(c)(1).

This decision concerns only Kmart's cross-motion for relief from the automatic stay to terminate the Agreements on the basis of the ipso facto termination clause, relying on Section 365(e)(2).

### Jurisdiction

This Court has jurisdiction over these proceedings under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of referral to Bankruptcy Judges signed by Acting Chief Judge Robert J. Ward on July 10, 1984. These are core proceedings under 28 U.S.C. § 157(b).

### Background

The debtors filed numerous cases in March 2004 under Chapter 11 of the Bankruptcy Code, which have been procedurally consolidated under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. After divesting a segment of debtors' business and streamlining the remaining segment, debtors' operations are profitable and, based on the debtors' operation of shoe departments in approximately 1,500 Kmart stores, may enable the debtors to propose a plan providing full payment to creditors.

Sales of discount family footwear at shoe departments located in Kmart stores generate approximately ninety-five percent of the debtors' remaining revenues. A so-called "Master Agreement" effective as of July 1, 1995 governs the relationship between debtor Footstar, Inc. ("Footstar") and Kmart. Pursuant to the Master Agreement, each shoe department in a Kmart store is operated by a separate "Shoemart Corporation" owned fifty-one percent by Footstar and forty-nine percent by Kmart.

Each Shoemart Corporation enters into a "Sub-Agreement" with Kmart which provides that the Shoemart Corporation has the exclusive right to operate a footwear department in the particular Kmart store.

Section 4.2(a)(iv) of the Master Agreement (the "Ipso Facto Termination Clause") permits Kmart to terminate the Master Agreement if Footstar:

> shall fail to pay its debts or obligations when due, or shall make any assignment for the benefit of creditors, or shall file, or have passed any resolution for its voluntary liquidation, or have filed against it any petition for protection or relief from creditors or any petition in bankruptcy, or be adjudicated bankrupt or insolvent, or if any receiver or judicial manager is appointed for its business or property (provided such resolution is not rescinded or such proceeding or petition is not dismissed during the cure period described in Article 4.2(a)(iii) above).

The Master Agreement also contains a provision in Article 16 prohibiting assignment (the "No Assignment Clause").

It is pursuant to the Ipso Facto Termination Clause, Section 365(e)(2), the No Assignment Clause and "applicable law" that Kmart seeks to terminate the Master Agreement and the Sub-Agreement (collectively, the "Agreements").

## Discussion

Kmart asserts that its right to terminate the Agreements under the Ipso Facto Termination Clause was triggered by the debtors' bankruptcy filings.

Section 365(e)(1) provides, in relevant part:

> (e)(1)   Notwithstanding a provision in an executory contract...or in applicable law, an executory contract...of the debtor may not be terminated or modified, and any right or obligation under such contract...may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract...that is conditioned on—
>    (A) the insolvency or financial condition of the debtor at any time before the closing of the case; [or]
>    (B) the commencement of a case under this title....

The provision effectively nullifies the Ipso Facto Termination Clause. However, subsection (2) of Section 365(e) creates an exception to subsection (1). It provides, in pertinent part:

- 3 -

  (2) Paragraph (1) of this subsection does not apply to an executory contract...of the debtor...if—
   (A) (i) applicable law excuses a party, other than the debtor, to such contract...from accepting performance from or rendering performance to the trustee or to an assignee of such contract...; and
    (ii) such party does not consent to such assumption or assignment….

Kmart argues that under the No Assignment Clause and "applicable law" Kmart is excused "from accepting performance from or rendering performance to the trustee or to an assignee," and that therefore subsection (2) applies and vitiates subsection (1) of Section 365(e). Kmart does not argue that it will be forced to actually accept performance from a trustee or assignee, since that is not the fact here. Kmart's argument is that if, hypothetically, there were a trustee or assignee, Kmart would be excused from accepting performance from or rendering performance to the hypothetical trustee or assignee. This would trigger subsection (2) and vitiate subsection (1) of Section 365(e), thereby allowing Kmart to terminate the Agreements under the Ipso Facto Termination Clause.

  Debtors ask the Court to reject this line of reasoning because it is based on a fiction and runs counter to this Court's Section 365(c)(1) Decision.

  The threshold question presented is whether the exception in Section 365(e)(2) applies on the facts before the Court. Because I conclude that Section 365(e)(2) poses an actual test of events as they stand, instead of a test based on a fictional set of circumstances that do not exist here, I do not reach the other issues argued by the parties.

  While there is no legislative history indicating whether Congress intended an actual or hypothetical test in Section 365(e)(2)(A), the First Circuit has held that "[a] proper construction of Section 365(e)(2)(A) requires consideration of companion section 365(c) as well, which governs the related question whether a trustee or debtor in possession may *assume* an executory contract that the nondebtor party claims to be 'nonassignable' under applicable nonbankruptcy law." *Summit Inv. and*

*Dev. Corp. v. Leroux*, 69 F.3d 608, 612 (1st Cir. 1995). Whether they have concluded that Section 365(e)(2)(A) poses an actual or hypothetical test, courts addressing Section 365(e)(2) have opined that it and Section 365(c)(1) are closely related and that Section 365(e)(2) addresses the same executory contracts that fall within the scope of Section 365(c)(1). *See Perlman v. Catapult Entm't, Inc. (In re Catapult Entm't, Inc.)*, 165 F.3d 747, 753 n.6 (9th Cir. 1999) ("§ 365(e)(2)(A) expressly revives 'ipso facto' clauses in precisely the same executory contracts that fall within the scope of §365(c)(1)."); *Breeden v. Catron (In re Catron)*, 158 B.R. 629, 639 (E.D. Va. 1993), *aff'd*, 25 F.3d 1038 (4th Cir. 1994) ("[T]he analysis used to dispose of appellant's argument with respect to § 365(c) applies with equal force to appellant's § 365(e) argument."); *In re Morgan Sangamon P'ship*, 269 B.R. 652, 654 (Bankr. N.D. Ill. 2001) ("11 U.S.C. § 365(e)(2)(A) 'expressly revives "ipso facto" clauses in precisely the same executory contracts that fall within the scope of § 365(c)(1).'") (quoting 165 F.3d at 753 n.6); *Calvin v. Siegal (In re Siegal)*, 190 B.R. 639, 644 (Bankr. D. Ariz. 1996) ("Section 365(e)(2) is closely related to Section 365(c)(1)."); *In re Cardinal Industries, Inc.*, 116 B.R. 964, 982 (Bankr. S.D. Ohio 1990) ("Section 365(e)(2), which is an exception to the *ipso facto* invalidation provided by § 365(e) generally, is meant to reflect the same philosophy [as Section 365(c)(1)].").[1] Although Section 365(c)(1) and Section 365(e)(2) may seem unnecessarily duplicative, the purpose "is to make it clear that not only may a nonassumable contract…not be assumed or assigned, but that the obligations of the other party may be terminated." COLLIER ON BANKRUPTCY ¶ 365.07[2] (15th ed. 2005). *See also Summit Inv. and Dev. Corp. v. Leroux*, 1995 WL 447800, at *7 (D. Mass. Oct. 20, 1994), *aff'd*, 69 F.3d 608 (1st Cir. 1995) ("Section 365(e) addresses the threshold issue of which state law and contract *ipso facto* provisions survive as consistent with federal bankruptcy law" while "Section 365(c) addresses…the subsequent

---

[1] Of these, two cases adopt a hypothetical test: *Catapult Entm't, Inc.*, 165 F.3d at 750, 753 n.6, and *Catron*, 158 B.R. at 638-39.

question of when a trustee of a bankruptcy estate 'may assume or reject an executory contract…of the debtor.' § 365(a).").

It is relevant, then, to briefly examine this Court's 365(c)(1) Decision. In that decision, this Court examined whether Section 365(c)(1) as applied to the debtor in possession prohibits assumption without assignment of an executory contract. Section 365(c)(1) provides, in pertinent part, that "[t]he trustee may not assume or assign any executory contract...if...applicable law excuses a party, other than the debtor, to such contract...from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession." This Court held, pursuant to Section 1107(a), that the limitation on the trustee that prevents forcing a party to accept performance from or give performance to "an entity other than the debtor or debtor in possession" applies to a debtor in possession. 2005 WL 563725, at *6. Thus, a debtor in possession would be precluded from assuming and then assigning its executory contract in violation of applicable law.

But this Court went on to observe that "the substantive limitation in Section 365(c)(1) by its terms becomes operative only '*if*' the non-debtor is excused by applicable law from further contractual relations with an entity '*other than*' the debtor." *Id*. at *8. Applying the plain meaning of Section 365(c)(1), this Court noted that the limitation prohibits a *trustee* from assuming in such circumstances because the trustee *is* "an entity other than the debtor or debtor in possession." *Id*. However, this Court concluded that, as applied to the debtor in possession, Section 365(c)(1) does not prohibit a debtor in possession from assuming a contract because the debtor in possession *is not* "an entity *other than* the debtor or debtor in possession." *Id*.

This Court stated that this conclusion "gives full effect to [Section 365(c)(1)] and to the provisions and objectives of Chapter 11, which are designed to foster, not frustrate, the reorganization and economic well-being of debtors in possession" by avoiding "the perverse and anomalous consequence of the 'hypothetical test' rule under which a debtor may lose the benefit of a non-assignable contract vital to

its economic future solely because it filed for bankruptcy." *Id*. at *7. In doing so, this Court refused to countenance the use of a fiction that a debtor in possession is "an entity other than the debtor or the debtor in possession" and instead looked to the substance of the provision as required by the Second Circuit in *In re Century Brass Products*, 22 F.3d 37 (2d Cir. 1994). 2005 WL at *8.

The reasoning in the 365(c)(1) Decision applies with equal force to Section 365(e)(2). As courts addressing Section 365(e)(2) have rightly held, both sections address the same issue of forcing acceptance of performance from a non-debtor entity where applicable law excuses doing so. Looking to the substance of the provision, as the Second Circuit in *In re Century Brass* dictates, the exception to Section 365(e)(1) only applies *if* the substantive limitation in subsection 365(e)(2)(A) excuses performance by the non-debtor party. Where there is no trustee or assignee, the exception in Section 365(e)(2) by its very terms cannot apply because there is no trustee or assignee from which the counterparty would have to accept performance. *See Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 493 (1st Cir.), *cert. denied*, 521 U.S. 1120 (1997) ("[S]ubsections 365(c) and (e) contemplate a case-by-case inquiry into whether the nondebtor party...*actually* was being 'forced to accept performance under its executory contract from someone other than the debtor party with whom it originally contracted.'") (quoting *Leroux*, 69 F.3d at 612); *In re Mirant Corp.*, 303 B.R. 319, 333 (Bankr. N.D. Tex. 2003) ("[S]ection 365(e)(2)(A) does not permit invocation of an *ipso facto* clause as a default unless assumption by the trustee—versus the debtor or debtor in possession—is contemplated."); *Calvin v. Siegal (In re Siegal)*, 190 B.R. 639, 646 (Bankr. D. Ariz. 1996) ("Section 365(e)(2) permits state law mandated dissolution to occur only when actual substituted performance is contemplated."); COLLIER ON BANKRUPTCY ¶ 365.07[2] (15th ed. 2005) ("It seems clear that the intent was to permit termination only when substituted performance would occur.").

Although courts that have adopted both the actual and hypothetical approach to Section 365(e)(2) have held that Sections 365(c)(1) and (e)(2) should be analyzed the same way because the

policy concern is the same, Kmart asserts that Sections 365(c)(1) and 365(e)(2) should be analyzed independently because Congress amended Section 365(c)(1) in 1984 and 1986, but did not amend Section 365(e)(2).[2] However, even analyzed separately from Section 365(c)(1), this Court would reach the same conclusion.

The exception on its face would only apply *if* Kmart were excused from "accepting performance from or rendering performance to the trustee or an assignee." Applicable law cannot excuse Kmart from "accepting performance from or rendering performance to the trustee or to an assignee" because there is no trustee or assignee from which Kmart would be forced to accept performance, and applicable law certainly does not excuse Kmart from its performance obligations to and from Foostar. Subsection (2) simply does not apply in this case, since there is no trustee or assignee. Just as with Section 365(c)(1), it is unacceptable to make a decision based on a fictional set of circumstances that does not exist. Such an approach would directly contravene the objectives of Chapter 11 by frustrating the reorganization of a debtor simply because it filed for bankruptcy protection to reorganize. To construe subsection (2) of Section 365(e) as Kmart urges would confound Congress' clearly stated

---

[2] Originally, Section 365(c)(1) read exactly the same as Section 365(e)(2). However, in 1984 Congress replaced "the trustee" only in Section 365(c)(1) with "an entity other than the debtor or the debtor in possession." Pub. L. No. 98-353 (1984). In 1986, Congress further amended Section 365(c)(1) by striking "or an assignee of such contract or lease." Pub. L. No. 99-554 (1986). Respecting these amendments, see *In re Mirant Corp.*, 303 B.R. at 334, where the court said:

> Moreover, Congress did not *need* to amend section 365(e)(2)(A) to conform to the new language of section 365(c)(1). Though a debtor in possession is often equated with a trustee, the two are not the same. It is pursuant to section 1107(a) of the Code that the debtor in possession is empowered as an estate representative in lieu of a trustee. Section 1107(a) provides in pertinent part that "[s]ubject to any limitations on a trustee...a debtor in possession shall have all the rights...and powers, and shall perform all the functions and duties...of a trustee serving in a case under this chapter." While section 365(c)(1) provides a limit on the trustee's rights and powers, and so had to be amended to except from that limitation debtors and debtors in possession, section 365(e) does not grant a power, right, duty or function to the trustee and, therefore, section 365(e)(2)(A) does not limit a power, right, duty or function of the trustee and, by extension, the debtor in possession. Thus, there was no need for Congress to differentiate between a trustee and the debtor in possession in that provision.

purpose in subsection (1) of voiding ipso facto termination clauses where the debtor itself continues to

perform its obligations.

**Conclusion**

For the reasons stated above and in the Court's Section 365(c)(1) Decision, Kmart's cross-motion for relief from the automatic stay to terminate the Agreements pursuant to the Ipso Facto Termination Clause and Section 365(e)(2) is denied.

Dated: White Plains, New York
       May 10, 2005

/s/ Adlai S. Hardin, Jr.
U.S.B.J.