UNITED STATES BANKRUPTCY COURT                    **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                              :     Chapter 11

FOOTSTAR, INC., et al.,                             :     Case No. 04 B 22350 (ASH)

                              Debtors.              :     (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**A P P E A R A N C E S :**

**WACHTELL, LIPTON, ROSEN & KATZ**
**Attorneys for Kmart Corporation**
**By:  Amy R. Wolf, Esq.**
**       Robert B. Mazur, Esq.**
**       Douglas K. Mayer, Esq.**
**       Emil A. Kleinhaus, Esq.**
**51 West 52 Street**
**New York, NY 10019**

**WEIL, GOTSHAL & MANGES LLP**
**Attorneys for Debtors**
**By:  Martin J. Bienenstock, Esq.**
**       Paul M. Basta, Esq.**
**       Penny P. Reid, Esq.**
**767 Fifth Avenue**
**New York, NY 10153**

**KRONISH LIEB WEINER & HELLMAN LLP**
**Attorneys for the Official Committee of Unsecured Creditors**
**By:  Lawrence C. Gottlieb, Esq.**
**       Jay R. Indyke, Esq.**
**       Richard S. Kanowitz, Esq.**
**1114 Avenue of the Americas**
**New York, NY 10036**

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
**Attorneys for the Official Committee of Equity Security Holders**
**By: David M. Feldman, Esq.**
**       Matthew J. Williams, Esq.**
**       Erin L. Eliasen, Esq.**
**919 Third Avenue**
**New York, NY 10022**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

**AMENDED**
**OPINION AND ORDER**
**DENYING DEBTORS' MOTION FOR RECONSIDERATION**
**OF DECISION ON KMART'S MOTION TO LIFT THE STAY**
**WITH RESPECT TO CERTAIN STORES**

By decision dated May 10, 2005 (the AMay 10 Decision@) this Court granted Kmart=s

motion to lift the stay with respect to certain stores which were in the process of being converted from

Kmart stores to Sears Essentials stores.  The debtors have moved for reconsideration under Bankruptcy

Rule 9023 based upon Anewly discovered@ extrinsic evidence by which they seek an interpretation of the

1995 Master Agreement between the parties which would materially change the terms of that

Agreement.  Because this would violate the parol evidence rule, the motion for reconsideration must be

denied.

To avoid unnecessary repetition of the May 10 Decision, this opinion will be deemed a

supplement to and should be read in conjunction with the May 10 Decision.  Only the new evidence and

arguments raised in the motion for reconsideration will be dealt with here.

### The "newly discovered" evidence, and argument

The Anewly discovered@ evidence is best described at paragraph 2 of the debtors= motion

for reconsideration, quoted here in full.  Footnote 2 is as it appears in the debtors= motion.

> 2.  The newly discovered documents are the files of the Debtors= former Chief
> Executive Officer, John Michael Robinson.  The predecessor contract to the Master
> Agreement expired in 1995.  Mr. Robinson was one of the principal negotiators in
> connection with the current Master Agreement.  Mr. Robinson=s files include drafts of
> the Master Agreement sent back and forth between the parties and Mr. Robinson=s notes
> in connection with the Debtors= comments to those drafts.  Mr. Robinson=s notes, copies
> of which are annexed to his affidavit (the ARobinson Affidavit@), reveal that, while Kmart
> sought to remove the word Aor@ from the Master Agreement, Mr. Robinson contested
> such removal, fearing that it would provide Kmart with a loophole B i.e., the right to evict
> the Debtors from a Store merely by changing the name.[2]  Ultimately, the Aor@ remained in
> the Master Agreement, the intent being that Kmart cannot do that which the Decision
> now authorizes.  Because these documents show that the Aor@ was not a typographical
> error, the Debtors have withdrawn the Stay Motion and ask that the Court vacate the
> Decision and allow the Debtors to proceed with the Sears Essentials conversion litigation
> (the AConversion Litigation@).

---

[2] Mr. Robinson=s notes are attached to a draft of the Master Agreement on which Kmart=s only
comment on p.9 was to remove Aor@ from Aor under which the Stores are operated.@  Mr.
Robinson noted his response to the p.9 comments: Aname section gives them loophole.@

Based upon the newly discovered evidence (Mr. Robinson's belatedly discovered file and the Robinson affidavit), the debtors advance the following argument in paragraph 11 of their motion for reconsideration:

> 11.  Mr. Robinson's notes and the Robinson Affidavit demonstrate that the "or" was not a typographical error.  In fact, in the course of negotiating the Master Agreement, Mr. Robinson believed that removal of the "or" would "create a loophole for Kmart."  Obviously, Mr. Robinson believed that Kmart could not simply change a Store name, and thereby, evict the debtors from that Store.  The Decision provides that if the "or" is not removed, the resulting interpretation is "nonsense."  Decision at 9.  Mr. Robinson's notes reveal the parties' intent that the italicized phrase act as a "belt and suspenders" provision, protecting the Debtors from Kmart's "change the name and you're out" interpretation.  In light of the evidence establishing the parties' intent that the word "or" serve a specific and important function in the service mark provisions, Michigan law prohibits the Court from striking the word.  *See Klapp v. United Ins. Group Agency*, 663 N.W.2d 447, 455 (Mich. 2003) ("[I]f the extrinsic evidence indicates that the parties intended their contract to have a particular meaning, this is the meaning that should be given to the contract, regardless of whether this meaning is in accord with the drafter's or the nondrafter's view of the contract.").  As a result, the plain meaning of the service mark provision encompasses the Converting Stores.

## Procedural defects in the debtors' motion for reconsideration

Kmart's objection in Point I of its Opposition to Debtors' Motion for Reconsideration is well founded, in my view.  Mr. Robinson's personal document file containing the handwritten notes and other documents in question was in the debtors' possession at all times and should have been produced in response to a Kmart document request last fall.  No explanation for the failure to produce the file was proffered by any knowledgeable or responsible employees of the debtors, and the explanation for the oversight was tendered by outside counsel with no personal knowledge based upon hearsay.  Lacking any explanation from knowledgeable or responsible personnel of the debtors, it is not at all clear that Mr. Robinson's file could not have been located last fall with the exercise of reasonable diligence.

Nevertheless, I shall consider the motion on its merits.

### Discussion

Preliminarily, it must be noted that the May 10 Decision was a legal ruling upon a point of contract interpretation not dependent on extrinsic evidence.  The legal issue concerned the interpretation of the third element in the definition of AStore(s),@ specifically, a store operated by Kmart Aunder the service mark KMART (or some other service mark incorporating Kmart in whole or in part *or under which the stores are operated*@) (italics supplied).  The debtors argued that the italicized clause in the parenthetical should be construed to mean that the definition of AStore(s)@ was understood and intended by the parties to mean a store operated under *any* tradename whether including the tradename Kmart or not.  The effect of this interpretation of the italicized clause would be to render surplusage and nugatory the substantive contractual provision Aunder the service mark KMART@ and the first clause in the parenthetical amplifying the substantive provision Aor some other service mark incorporating Kmart in whole or in part. . . .@

Because the italicized clause by no means compels the interpretation the debtors seek to put upon it, I concluded in the May 10 Decision that the debtors= interpretation was Anonsense@ and untenable as a matter of law, stating:

> [I]f the parties had really intended to eliminate the third requirement of the definition, they would have simply eliminated the substantive provision altogether, and the parenthetical with it.   The fact that the parties did not eliminate the definitional requirement of stores operated Aunder the service mark KMART@ [or SUPER KMART CENTER] stands as a complete refutation of Footstar=s argument.

The only reference to any extrinsic evidence in the parties= submissions on the original motion came in connection with the debtors= argument based on the rule of *contra proferentem* to the effect that the ambiguous italicized clause should be construed against Kmart as the party which drafted it.  In response to this argument, Kmart tendered the March 27, 1995 letter from the legal counsel for Melville (the prior name for Footstar), which demonstrated two things.  First, the parenthetical language was inserted in the draft agreement by Melville=s counsel, not Kmart, which means that the parenthetical

should be construed against the debtors under the rule of *contra proferentem*. Second, counsel=s

March 27, 1995 letter explaining the insertion as Ato take into account any modifications to the Kmart

Service mark@ refutes any understanding or intent on the part of Melville=s counsel that the parenthetical

was intended to eliminate the requirement of the Kmart service name as the third element in the definition

of AStore(s).@ *See* the May 10 Decision at footnote 3.

The debtors= newly discovered, fact-based argument would face a number of difficult

credibility issues, including the very belated discovery of the evidence; the fragmentary nature of the

handwritten notes, which are unintelligible without the testimony, ten years after the fact, of Mr.

Robinson; the debtors= failure to locate a single document other than the notes supporting the newly

discovered position of the Melville CEO; the March 27, 1995 letter from Maureen Richards, Melville=s

counsel, which, as already noted, undermines Mr. Robinson=s affidavit; the rule of *contra proferentem*

mentioned above; and the failure even at this late date to proffer any testimony or affidavit of Ms.

Richards to support Mr. Robinson=s affidavit or to explain her March 27, 1995 letter and why she did not

disclose Melville=s intent (if she thought it was the intent) to eliminate the Kmart service mark requirement

from the definition.

If the objective of Melville=s CEO in 1995 was to protect Melville=s contractual license to

stay in Kmart stores even if Kmart were to abandon its valuable and closely protected tradename as a

result of some material corporate or other change in its business, one would have thought that he would

have discussed the issue with his counsel, communicated the concern to Kmart and demanded that the

third element in the definition of AStore(s)@ requiring operation under the Kmart service mark be

eliminated, in which case the parties might have agreed to eliminate the service mark requirement. On

the other hand, Kmart might not have so agreed, if the freedom to change its method of merchandising

had been perceived by Kmart to be as important in 1995 as it is in 2005. In any event, Melville did not put

the Kmart service mark issue forthrightly on the negotiating table in 1995. Consequently, the position now

asserted by the debtors appears to be that Melville sought to achieve Mr. Robinson=s purported objective

by guile or stealth, inserting the italicized clause with a covering letter from Melville=s counsel which

disclosed no indication that Melville=s purpose for inserting the clause was to entirely eliminate the third

requirement in the definition of AStore(s)@ that the stores be operated Aunder the service mark KMART

(or some other service mark incorporating Kmart in whole or in part . . .).@

        Putting aside such issues of credibility, debtors' newly discovered argument must be

rejected as a matter of law under the parol evidence rule.  It is well established that parol evidence cannot

add, vary, or contradict the language of a clear and unambiguous written contract.   Indeed, the very

purpose of the parol evidence rule is to preclude either party to a written agreement from the *post hoc*

use of extrinsic evidence to eliminate or change clear, substantive provisions of the contract.  *Andersons,*

*Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 315 (6th Cir. 1998) ("[I]n Michigan, where the contract is

clear and unambiguous on its face, the parol evidence rule operates to preclude the introduction of

evidence *dehors* the contract that would vary or contradict the contract's unambiguous terms.") (citing

*Salzman v. Maldaver,* 315 Mich. 403, 412 (1946)); *American Anodco, Inc. v. Reynolds Metals Co.,*

743 F.2d 417, 422 (6th Cir. 1984) ("Michigan recognizes the parol evidence rule to the extent of not

permitting extrinsic evidence to contradict or vary the terms of a written contract."); *Reed v. Reed*, 265

Mich. App. 131, 148 (2005) ("[A] party to a written contract that is clear and unambiguous may not vary

its terms with parol evidence."); *Burkhardt v. Bailey*, 260 Mich. App. 636, 656-57, *appeal denied*, 471

Mich. 920 (2004) ("[W]hen the language of a document is clear and unambiguous, interpretation is limited

to the actual words used, and parol evidence is inadmissible to prove a different intent."); *Wausau*

*Underwriters Ins. Co. v. Ajax Paving Indus.*, *Inc.,* 256 Mich. App. 646, 650, *appeal denied,* 469 Mich.

970 (2003) ("Clear, unambiguous, and definite contract language must be enforced as written and courts

may not write a different contract for the parties or consider extrinsic evidence to determine the parties'

intent."); *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich. App. 486,

491 (1998) ("[C]ourt[s] do[ ] not have the right to make a different contract for the parties or to look to

extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and

have a definite meaning.") (citing *Sheldon-Seatz, Inc. v. Coles,* 319 Mich. 401, 406-07 (1947));

*Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 722 (1997) ("Parol evidence is not admissible to

vary a contract that is clear and unambiguous. . . ."); *In re Skotzke Estate,* 216 Mich. App. 247, 251

(1996) ("Where a contract is clear and unambiguous, parol evidence cannot be admitted to vary it.").

   The substantive provision in the definition of AStore(s)@ that the stores be operated Aunder

the service mark KMART@ is clear and unambiguous, as is the first clause in the parenthetical Aor some

other service mark incorporating Kmart in whole or in part. . . .@  The May 10 Decision rejected as a

matter of law the debtors= contention that the italicized clause could be so construed as to entirely

eliminate the substantive Aservice mark KMART@ requirement of the definition.  Implicit, if not explicit, in

that holding is the conclusion that the definition taken as a whole is unambiguous.

   If a contract, however inartfully worded or clumsily arranged, fairly admits of but one

interpretation, it may not be said to be ambiguous.  *Hellebuyck v. Farm Bureau General Ins. Co. of

Mich.,* 262 Mich. App. 250, 254 (2004) (citing *Raska v. Farm Bureau Mut. Ins. Co. of Mich.,* 412

Mich. 355, 362 (1982)).  A contract is ambiguous only if its language is reasonably susceptible to more

than one interpretation.  *Universal Underwriters Ins. Co. v. Kneeland,* 464 Mich. 491, 496 (2001) ("A

contract is ambiguous if its provisions may reasonably be understood in different ways.") (citing *Farm

Bureau Ins. Co. v. Nikkel,* 460 Mich. 558, 566 (1999)); *Rinke v. Automotive Moulding Co.,* 226 Mich.

App. 432, 435 (1997) ("A contract is ambiguous only if its language is reasonably susceptible to more than

one interpretation."); *D'Avanzo v. Wise & Marsac, P.C.*, 223 Mich. App. 314, 319 (1997) ("A contract

is ambiguous if the language is susceptible to two or more reasonable interpretations."); *McCormic v.

Auto Club Ins. Ass'n,* 202 Mich. App. 233, 239 (1993) ("A contract is ambiguous when its words may

reasonably be understood in different ways.") (citing *Farm Bureau Ins. Co. v. Stark,* 437 Mich. 175, 181

(1991)).

To now construe the italicized clause in the manner sought by the debtors, based upon extrinsic or parol evidence, would radically change an unambiguous substantive term of the contract signed by the parties.  Rules of contract interpretation cannot be formulated or used to create or facilitate traps for the unwary.  As explained in the May 10 Decision, the cryptic italicized clause in the parenthetical inserted by Melville with Ms. Richards=March 27, 1995 letter cannot fairly or reasonably be interpreted to negate the substantive provision to which the parenthetical was appended, as well as the first half of the parenthetical itself.

The parol evidence rule is not merely a rule of evidence, but also a substantive rule of contract law.  *Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 315 (6th Cir. 1998) ("In Michigan, as in most states, the parol evidence rule is both a rule of evidence and a rule of substantive law.") (quoting *Salzman v. Maldaver,* 315 Mich. 403, 412 (Mich. 1946)); *American Anodco, Inc. v. Reynolds Metals Co.,* 743 F.2d 417, 422 (6th Cir. 1984) ("Though the parol evidence rule relates to trial procedure, it is substantive in nature.").  Under the parol evidence rule a court is forbidden to make substantive changes in provisions of an unambiguous contract based upon extrinsic evidence.  That is precisely the objective and consequence of the argument now advanced by the debtors, and it must be rejected as a matter of law.

## **Conclusion and Order**

The debtors= motion for reconsideration must be denied both as a matter of procedure

and, upon the merits, as a matter of law.

It is **SO ORDERED**.


Dated:   White Plains, NY
             June 24, 2005


                                                                    /s/ Adlai S. Hardin, Jr
                                                                                 U.S.B.J.