**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ---------------------------------------------------------- x | |
| **In re** : | |
| : | **Chapter 11 Case No.** |
| **FOOTSTAR, INC., et al.,** : | **04-22350 (ASH)** |
| : | |
| : | **(Jointly Administered)** |
| **Debtors.** : | |
| ----------------------------------------------------------x | |

### ORDER CONFIRMING DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED DECEMBER 5, 2005

Footstar, Inc. ("Footstar") and its affiliated debtors, as debtors and debtors

in possession (collectively, with Footstar, the "Debtors"), having proposed and filed the

Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code, dated December 5, 2005 (the "Plan"); and the Amended Disclosure

Statement for Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of

the Bankruptcy Code, dated December 5, 2005 (the "Disclosure Statement"), having been

approved by this Court, and duly transmitted to holders of Claims[1] and Footstar Equity

Interests in compliance with the order of this Court, dated December 5, 2005 (the

"Disclosure Statement Order"):  (a) approving the Disclosure Statement pursuant to

section 1125 of the Bankruptcy Code; (b) establishing a voting record date and

solicitation and tabulation procedures; and (c) providing for certain other relief; and a

hearing having been held before this Court on January 25, 2006 to consider confirmation

of the Plan (the "Confirmation Hearing"); and due notice of the Confirmation Hearing

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan.

having been provided to holders of Claims against and Equity Interests in the Debtors and other parties in interest, in compliance with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules, as established by the affidavits of service, mailing, and publication filed with the Bankruptcy Court, as evidenced by: (i) the Affidavit of Service, dated December 16, 2006, of Jane Sullivan, a director of Financial Balloting Group LLC (Docket No. 3049) (describing service of the Solicitation Material (as defined below), including notices of non-voting status) (the "Sullivan Solicitation Affidavit"); (ii) the Certification of Jane Sullivan With Regard to the Tabulation of Votes on the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated January 20, 2006 (Docket No. 3327) (describing the methodology for the tabulation of and results of voting with respect to the Plan) (the "Sullivan Tabulation Affidavit," collectively with the Sullivan Solicitation Affidavit, the "Sullivan Affidavits"); (iii) the Affidavit of Publication in *The Wall Street Journal* (National Edition), dated December 20, 2005 (Docket No. 3067) of Morgan Gillespie, Advertising Clerk of the Publisher of *The Wall Street Journal*; and (iv) the Affidavit of Publication in *The New York Times* (National Edition), dated December 20, 2005 (Docket No. 3068) of Cathy Zike, Principal Clerk of the Publisher of *The New York Times* (collectively, the "Publication Affidavits"), and such notice being sufficient under the circumstances and no further notice being required; and based upon and after consideration of the Declaration of Dale W. Hilpert, Chief Executive Officer of Footstar, in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated January 23, 2006 (the "Hilpert Declaration"); and the Court having considered (A) the objection to confirmation of the

Plan filed by various taxing entities on January 10, 2006 and (B) the memorandum of law

in support of confirmation of the Plan filed by the Debtors, dated January 23, 2006; and

having reviewed and considered the entire record of the Confirmation Hearing, including

the Plan, the Disclosure Statement, the Disclosure Statement Order, the Hilpert

Declaration, and all related documents; and the Court being familiar with the Plan and

other relevant factors affecting the Chapter 11 Cases; and the Court being fully familiar

with, and having taken judicial notice of, the entire record of the Chapter 11 Cases since

the commencement of the Chapter 11 Cases on March 2, 2004 (the "Commencement

Date"); and upon the arguments of counsel and the evidence adduced at the Confirmation

Hearing; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED,

AND DECREED, AS FOLLOWS:

## **INTRODUCTION**

1.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth

herein and in the record of the Confirmation Hearing constitute this Court's findings of

fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure,

as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the

extent any of the following conclusions of law constitute findings of fact, they are

adopted as such.

2.      <u>Jurisdiction</u>.  The Court has jurisdiction over the Debtors' Chapter

11 Cases and to confirm the Plan pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and the Court has jurisdiction

to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the various hearings held before the Court during the pendency of the Chapter 11 Cases.

4.     <u>Solicitation and Notice</u>. As described in and as evidenced by the Sullivan Affidavits and the Publication Affidavit, the Plan, Disclosure Statement, Disclosure Statement Order, notice of the Confirmation Hearing, an appropriate ballot (collectively, the "Ballots") for voting on the Plan and return envelope or a notice of non-voting status (in substantially the forms approved pursuant to the Disclosure Statement Order) (collectively, the "Solicitation Materials") were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. Also as described in such affidavits, the transmittal and service of the Solicitation Materials and the publication of notice of the Confirmation Hearing was timely, adequate, and sufficient under the circumstances.

5.     <u>Notice</u>. As is evidenced by the Sullivan Affidavits and the Publication Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been provided due, proper, timely, and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and have

had an opportunity to appear and to be heard with respect thereto. No other or further notice is required.

       6.     <u>Voting</u>. Votes to accept or reject the Plan have been solicited and tabulated in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

       7.     <u>Burden of Proof</u>. The Debtors have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

       8.     <u>Notice of Plan Supplement Documents</u>. The documents identified in the Plan Supplement were filed as required and notice of such documents was good and sufficient under the circumstances and no other or further notice is or shall be required.

## MODIFICATIONS TO THE PLAN

       9.     <u>Modifications</u>. Set forth below are certain modifications to the Plan (the "Modifications"). The Plan, as modified by the Modifications, constitutes the "Plan." The Modifications do not adversely affect the treatment of any Class of Claims against or Equity Interests in the Debtors under the Plan.

      (a)     Section 10.04 is modified as follows:

10.04   <u>Injunction</u>. Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities ~~who have held, hold, or may hold Claims against any or all of the Debtors~~ and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, who have held, hold, or may hold Claims against any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Reorganized Debtors with respect to any Claim, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Reorganized Debtors on account of any Claim, (iii) creating, perfecting, or enforcing any

encumbrance of any kind against the Reorganized Debtors, or against the property or interests in property of the Reorganized Debtors on account of any Claim, (iv) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan, and (v) taking any actions to interfere with the implementation or consummation of the Plan.

(b)     Section 10.06 is modified as follows:

10.06   <u>Exculpation</u>.  None of the Debtors, the Reorganized Debtors, the Postpetition Lenders, the Creditors' Committee, ~~or~~ the Equity Committee, the *ad hoc* committee of equity interest holders, or their respective employees, officers, directors, current or former members, or professionals shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of~~,~~ <u>(i) actions that were authorized by the Court in</u> the Chapter 11 Cases~~,~~ <u>and (ii)</u> the preparation or negotiation of the Disclosure Statement, the solicitation of votes in connection with the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct ~~or~~<u>,</u> gross negligence<u>, fraud, criminal conduct, misuse of confidential information that causes damages, or *ultra vires* acts</u>; *provided*, *however*, notwithstanding the foregoing, nothing in the Plan shall be deemed to release or exculpate Deloitte & Touche in connection with claims arising out of or related to Deloitte & Touche's alleged failure to detect and/or disclose material weaknesses in internal controls, accounts payable reconciliation procedures, and write-offs of accounts payable for each of the fiscal years 1997 through 2002.  Nothing in this Section 10.06 shall limit the liability of the professionals of the Debtors, the Reorganized Debtors, the Postpetition Lenders, the Creditors' Committee, or the Equity Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility

(c)     Section 13.12 is modified as follows:

13.13   <u>Expedited Tax Determination</u>.  The Disbursing Agent or Reorganized Debtors may request an expedited determination of taxes ~~under~~<u>in accordance with</u> section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for all taxable periods through the Effective Date

10.     <u>Deemed Acceptance of Plan as Modified</u>.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims against and Equity Interests in the Debtors who voted to accept the Plan are hereby

deemed to have accepted the Plan, as modified by the Modifications. No holder of a Claim or Equity Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications.

11.     <u>Notice of Plan Modifications</u>.  The filing with the Court of the Modifications, the service of the same on the persons that have filed notices of appearance and requests for the service of papers under Rule 2002 of the Federal Rules of Bankruptcy Procedure, and the disclosure of the Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.

12.     <u>Plan Modifications Compliance with the Bankruptcy Code (11 U.S.C. § 1127)</u>.  The Modifications incorporated into the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

13.     <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. §§ 1122, 1123, 1125, and 1127)</u>.  The Plan complies fully with sections 1122 and 1123 of the Bankruptcy Code.  The Debtors have complied with section 1125 with respect to the Disclosure Statement and the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

## CONFIRMATION OF THE PLAN

14.     <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)     <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  In addition to Administrative Expense Claims, Postpetition Credit Facility Claims, and Priority Tax Claims, which need not be classified, Article III of the Plan designates seven

Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b) <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III of the Plan specifies that Classes 1, 3, 5, and 7 are unimpaired under the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code. Moreover, pursuant to Section 4.02 of the Plan, the Debtors have determined in accordance with the Plan to pay holders of Allowed Secured Tax Claims in Class 2 in cash, in full, plus interest required under section 506(b), thereby rendering Class 2 unimpaired.

(c) <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan designates Classes 4 and 6 as impaired, and Sections 4.04 and 4.06 of the Plan specify the treatment of Claims and Equity Interests in those Classes, thereby complying with section 1123(a)(3) of the Bankruptcy Code.

(d) <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e) <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents set forth in the Plan Supplement provide adequate and proper

means for the implementation of the Plan, including, without limitation, (a) amendments to Footstar's charter and by-laws and (b) the re-vesting of assets of the Debtors' estates in the Reorganized Debtors.

(f)     Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).  Section 9.03 of the Plan provides that the certificates of incorporation for each of the Reorganized Debtors shall prohibit the issuance of nonvoting equity securities, thereby complying with section 1123(a)(6) of the Bankruptcy Code.

(g)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Section 9.02 of the Plan contains provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(h)     Additional Plan Provisions (11 U.S.C. § 1123(b)).  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(i)     Bankruptcy Rule 3016(a).  The Plan is dated and identifies the proponents, thereby satisfying Bankruptcy Rule 3016(a).

15.     Debtors Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)     The Debtors are proper debtors under section 109 of the Bankruptcy Code.

(b)     The Debtors have complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan.

16.     Plan Proposed In Good Faith (11 U.S.C. § 1129 (a)(3)).  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the record of these Chapter 11 Cases, including the Hilpert Declaration, the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful reorganization of the Debtors.  The Plan was negotiated at arms' length among representatives of the Debtors, the Postpetition Lenders and agent (in their respective capacities as lenders and agent under the Postpetition Facility and Exit Facility) the Creditors' Committee, the Equity Committee, and their respective professional advisors.  Further, the exculpation and injunction provisions of the Plan have been negotiated in good faith and at arms' length with, among other persons, representatives of the Debtors, the Postpetition Lenders and agent (in their respective capacities as lenders and agent under the Postpetition Facility and Exit Facility) the Creditors' Committee, the Equity Committee, and their respective advisors, are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code, and are each necessary to the Debtors' successful reorganization.

17.     Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4)).  All payments made or to be made by any of the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

18.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after the confirmation of the Plan have been fully disclosed and the appointment to, or continuance in, such offices of such persons are consistent with the interests of holders of Claims against, and Equity Interests in, the Debtors and with public policy.

19.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

20.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  Each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

21.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 1, 3, and 5 are unimpaired Classes of Claims and Class 7 is a Class of unimpaired Equity Interests, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Moreover, pursuant to Section 4.02 of the Plan, the Debtors have determined to pay holders of Allowed Secured Tax Claims in Class 2 in cash, in full, plus interest required under section 506(b), thereby rendering Class 2 unimpaired.  Class 2 is, therefore, conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Classes 4 and 6, the impaired Classes entitled to vote on the Plan, have voted to accept the Plan, and therefore, section 1129(a)(8) is satisfied and the Plan may be confirmed under section 1129(a) of the Bankruptcy Code.

22.     Treatment of Administrative Expense Claims, Postpetition Credit Facility Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expense Claims, Postpetition Credit Facility Claims, and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.  The treatment of Other Priority Claims pursuant to Section 4.01 of the Plan satisfies the requirements of sections 1129(a)(9)(C) of the Bankruptcy Code.

23.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  Classes 4 and 6 voted to accept the Plan by the requisite majority, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

24. <u>Feasibility (11 U.S.C. § 1129 (a)(11))</u>. The evidence proffered or adduced at the Confirmation Hearing, including the Hilpert Declaration: (a) is persuasive and credible; (b) has not been controverted by other evidence; and (c) establishes that the Plan has more than a reasonable likelihood of success and satisfies the feasibility standard, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

25. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on the Effective Date and, thereafter, as may be required pursuant to Section 13.05 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

26. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 8.10 of the Plan provides that on and after the Effective Date, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors have obligated themselves to provide such benefits, *provided*, *however*, that the Reorganized Debtors reserve the right to modify any and all such plans, funds and programs in accordance with the terms thereof, thereby satisfying the requirements of section 1129(a)(13) of the Bankruptcy Code.

27. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

28. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record in these Chapter 11 Cases, the Debtors, the Postpetition Lenders and agent (in their respective capacities as lenders and agent under the Postpetition Facility and Exit Facility), the Creditors' Committee, the Equity Committee, the *ad hoc* committee of equity interest holders, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.06 of the Plan.

29. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

30. <u>Settlement of Potential Litigation</u>. Two settlements form the cornerstones of the Plan: (a) the settlement between the Debtors, the Creditors' Committee, and the Equity Committee regarding the appropriate rate of interest to be paid on account of unsecured Claims in the Chapter 11 Cases and (b) the Debtors' settlement with Kmart regarding assumption of the Kmart Agreement. Both of these settlements were reached by the parties after extensive analysis and good faith negotiations, and are fair, prudent, and reasonable compromises of the controversies

resolved by such settlements and avoid the need for protracted and costly litigation of the underlying factual and legal issues resolved by such settlements.

31. <u>Substantive Consolidation of Debtors</u>. By prior order of the Court, the Debtors' assets and liabilities have been consolidated, and as a result, for the purposes of voting, confirmation, and distributions made under the Plan, the Debtors will be considered to be one legal entity, as set forth in Section 5.01 of the Plan and as described in the Disclosure Statement.

32. <u>Exit Facility</u>. By orders of the Court, dated June 30, 2005 and January 4, 2006, the Court, *inter alia*, authorized the Debtors to execute the Exit Facility and found that entry into such facility was in the best interests of the Debtors' estates and creditors. Such orders are incorporated herein as if restated in full.

33. <u>Assumption of Executory Contracts and Unexpired Leases</u>. The Plan provides that, except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Reorganized Debtors shall pay all undisputed Cure Claims. All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. Pursuant to Article XII of the Plan, the Court shall retain jurisdiction to resolve any disputes in connection with the assumption and cure of executory contracts and unexpired leases. The Hilpert Declaration, together with the projections set forth as Exhibit B to the Disclosure Statement, provide sufficient evidence of the Debtors' ability to provide adequate assurance of future performance. The Debtors have satisfied the provisions of

section 365 of the Bankruptcy Code with respect to the assumption of executory contracts and unexpired leases pursuant to Section 8.01 of the Plan.

34.     <u>Transfers by Debtors</u>.  The revesting, on the Effective Date, of the property of the Debtors' estates:  (a) vests the respective Reorganized Debtors or their successors or assigns, as the case may be, with good title to such property, free and clear of all Claims and Equity Interests, except as expressly provided in the Plan or this Order; and (b) does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

35.     <u>Injunctions and Exculpations</u>.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction and exculpation set forth in Article X of the Plan.  In addition, section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the exculpation set forth in Article X of the Plan, when, as here, such provisions are essential to the formulation and implementation of the Plan as provided in section 1123 of the Bankruptcy Code, confer material benefits on the Debtors' estates, are fair and reasonable, and are in the best interests of the Debtors, their estates, and holders of Claims and Equity Interests.  Based upon the record of the Chapter 11 Cases and the evidence proffered at the Confirmation Hearing, this Court finds that the injunction and exculpation set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

36.     <u>Confirmation</u>.  The Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.  Objections, if any, to confirmation of the Plan that have not been resolved or withdrawn are hereby overruled.

37.     <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

38.     <u>Plan Classification Controlling</u>.  The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classification set forth on the Ballots tendered or returned by the Debtors' creditors and interest holders in connection with voting on the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, the Reorganized Debtors, creditors, or interest holders for purposes other than voting on the Plan.

39.     <u>Substantive Consolidation of Debtors</u>.  Pursuant to a prior order of this Court, the Debtors have been substantively consolidated, so that, under the Plan: (a) all guaranties by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date are cancelled so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors are one obligation of the consolidated Debtors; (b) no distributions shall be made under the Plan on account of intercompany claims between or among the Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Cases is filed against the consolidated Debtors and is a Claim against and an obligation of the consolidated Debtors.

40.     <u>Authorization to Pay Obligations Under Postpetition Credit Facility</u>.  On the Effective Date, all obligations owed pursuant to the Postpetition Credit Facility shall be indefeasibly paid in full in Cash or as otherwise agreed by the Debtors and the Postpetition Lenders.

41.     <u>Merger, Dissolution, or Consolidation of Corporate Entities</u>.  In addition to the authority granted to the Debtors pursuant to the Substantive Consolidation Order, pursuant to Section 5.03 of the Plan, on or as of the Effective Date, within the sole and exclusive discretion of the Reorganized Debtors, the Reorganized Debtors may, notwithstanding any other transactions described in the Plan, (a) cause any or all of the Debtors to be merged into one or more of the Debtors, dissolved, or otherwise consolidated, (b) cause the transfer of assets between or among the Debtors, or (c) engage in any other transaction in furtherance of the Plan.  Any such transaction pursuant to Section 5.03 of the Plan shall be effective pursuant to this Order, without the taking of

any further action by the stockholders or directors of any of the Debtors, the Debtors in Possession, or the Reorganized Debtors.

42.     Cancellation of Existing Securities and Agreements.  Pursuant to Section 5.04 of the Plan, any document, agreement, or debt instrument evidencing any Claim, other than a Claim that is reinstated under the Plan, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors pursuant to such documents, agreements, or debt instruments evidencing such Claims, as the case may be, shall be discharged.

43.     Cancellation and Replacement of Common Stock.  As of the Effective Date, the stock certificates representing shares of common stock of Reorganized Footstar issued and outstanding immediately prior to the Effective Date (the "Old Common Stock") shall be deemed to be cancelled and Reorganized Footstar shall cause to be issued new shares of common stock of Reorganized Footstar (the "New Common Stock"), which may be uncertificated and/or certificated and shall be in the name of the same holders and representing the same number of shares as the Old Common Stock as in effect immediately prior to the Effective Date; provided that the New Common Stock shall contain one or more legends as required by Reorganized Footstar's Certificate of Incorporation and any applicable securities or corporate laws.

44.     Distributions Under the Plan.  All distributions under the Plan shall be made in accordance with Article VI of the Plan.

45.     Delivery of Distributions Under the Plan.  Pursuant to Section 6.06 of the Plan and subject to Bankruptcy Rule 9010, all distributions of Cash under the Plan shall be made to the holder of each Allowed Claim at the address of such holder as listed

on the Schedules as of the Distribution Notification Date, unless the Debtors or

Reorganized Debtors have been notified in writing of a change of address, including,

without limitation, by the timely filing of a proof of claim or Claim transfer agreement by

such holder that provides an address for such holder different from the address reflected

on the Schedules.  In the event that any distribution to any such holder is returned as

undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current

address of such holder, but no distribution to such holder shall be made unless and until

the Disbursing Agent has determined the then current address of such holder, at which

time such distribution shall be made to such holder; *provided*, *however*, that, with respect

to any creditor whose distribution is returned as undeliverable, interest shall cease

accruing on such creditor(s) Claim(s) on the date that such undeliverable distribution was

first distributed; *provided further*, *however*, that, at the expiration of one (1) year from the

Effective Date, such distributions shall be deemed unclaimed property and shall be

treated in accordance with Section 6.10 of the Plan.

      46.     <u>Distributions to Holders as of the Distribution Notification Date</u>.

As at the close of business on the Distribution Notification Date, the Claims register shall

be closed, and there shall be no further changes in the record holder of any Claim.  The

Disbursing Agent shall have no obligation to recognize any transfer of a Claim that

occurs after the Distribution Notification Date.  The Disbursing Agent shall instead be

authorized and entitled to recognize and deal for all purposes under the Plan with those

record holders listed on the Claims register as of the close of business on the Distribution

Notification Date.

47. <u>Unclaimed Distributions</u>.  Pursuant to Section 6.10 of the Plan, all distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in Reorganized Footstar and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

48. <u>Disputed Claims</u>.  The provisions of Article VII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, distributions, Tort Claims, and Allowed Insured Claims are found to be fair and reasonable and are hereby approved.

49. <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The assumption of any and all executory contracts and unexpired leases pursuant to Section 8.01 of the Plan is approved.

50. <u>Survival of Corporate Reimbursement Obligations</u>.  Pursuant to Section 8.06 of the Plan, the obligations of the Debtors to defend, indemnify, reimburse or limit the liability of their directors, officers or employees who were directors, officers or employees, respectively, on or after the Confirmation Date, solely in their capacity as directors, officers or employees, against any Claims or obligations pursuant to the Debtors' certificates of incorporation or bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged irrespective of whether indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before, on, or after the Commencement Date.

51. <u>Compensation and Retention Program</u>.  Subject only to the occurrence of the Effective Date, the Compensation and Retention Program annexed to the Plan as Exhibit A shall become effective without any further action by the Reorganized Debtors.

52. <u>Employment Contracts</u>.  Subject only to the occurrence of the Effective Date, the Employment Contract executed by Footstar and Jeffrey Sheppard, annexed as Exhibit B to the Plan, shall become effective without any further action by the Reorganized Debtors.  The employment agreements for 17 of the Reorganized Debtors' vice-presidents and senior vice-presidents, which were executed by Footstar and such vice-presidents and senior vice-presidents on November 29, 2005, the forms of which are annexed as Exhibit C of the Plan, shall become effective on the Effective Date without further action by the Reorganized Debtors.

53. <u>Reorganized Director Stock Plan</u>.  Prior to the Effective Date, Footstar shall adopt the Reorganized Director Stock Plan.  The terms of the Reorganized Director Stock Plan are contained in the Plan Supplement and are hereby approved.  On the Effective Date, Reorganized Footstar shall implement the Reorganized Director Stock Plan.

54. <u>Retiree Benefits</u>.  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code subject to any future right to amend, modify, or discontinue such benefits.

55.     <u>Directors and Officers</u>.  Pursuant to Section 9.02(a) of the Plan, effective as of the Effective Date, the persons identified in the Plan Supplement as the members of the boards of directors of the Reorganized Debtors are hereby deemed elected and appointed to serve in accordance with applicable nonbankruptcy law and the Reorganized Debtors' Certificates of Incorporation and By-laws.  The directors of the Debtors not continuing in office are hereby deemed removed effective upon the occurrence of the Effective Date.  Pursuant to Section 9.02(b) of the Plan, the officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date.  Such officers shall serve in accordance with applicable nonbankruptcy law, any employment agreement with the Reorganized Debtors, and the Reorganized Debtors' Certificates of Incorporation and By-laws.

56.     <u>Vesting of Assets</u>.  Pursuant to Section 10.01 of the Plan, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' bankruptcy estates shall vest in the Reorganized Debtors, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan.  From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided in the Plan.

57.     <u>Discharge of Claims</u>.  Pursuant to Section 10.02 of the Plan, upon the Effective Date, except as otherwise provided in the Plan or this Order, the rights

afforded in the Plan and the payments and distributions to be made pursuant to the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all existing debts and Claims of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against or in the Debtors or any of their assets or properties to the fullest extend permitted by section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, upon the Effective Date, all existing Claims against the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim.

58. _Discharge of Debtors_. Pursuant to Section 10.03 of the Plan, upon the Effective Date, except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against the Reorganized Debtors or any of their assets or properties.

59. _Injunction_. Pursuant to Section 10.04 of the Plan, except as otherwise expressly provided in the Plan, this Order, or other order of this Court, the

entities and other parties in interest, along with their respective present or former

employees, agents, officers, directors, or principals, who have held, hold, or may hold

Claims against any or all of the Debtors are permanently enjoined, on and after the

Effective Date, from (a) commencing or continuing in any manner any action or other

proceeding of any kind against the Reorganized Debtors with respect to any Claim, (b)

enforcing, attaching, collecting, or recovering by any manner or means any judgment,

award, decree, or order against the Reorganized Debtors on account of any such Claim,

(c) creating, perfecting, or enforcing any encumbrance of any kind against the

Reorganized Debtors, or against the property or interests in property of the Reorganized

Debtors on account of any Claim, (d) commencing or continuing in any manner any

action or other proceeding of any kind with respect to any Claims and Causes of Action

which are extinguished or released pursuant to the Plan, or (e) taking any actions to

interfere with the implementation or consummation of the Plan.

      60.   <u>Termination of Injunctions or Stays</u>.  Unless otherwise provided in

the Plan, this Order, or a separate order of this Court, all injunctions or stays arising

under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy

Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force

and effect until the later of the Effective Date and the date indicated in such applicable

order.

      61.   <u>Exculpation</u>.  As provided for in Section 10.06 of the Plan, none of

the Debtors, the Reorganized Debtors, the Postpetition Lenders, the Creditors'

Committee, the Equity Committee, the *ad hoc* committee of equity interest holders, or

their respective employees, officers, directors, current or former members, or

professionals shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the preparation or negotiation of the Disclosure Statement, the solicitation of votes in connection with the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct, gross negligence, fraud, criminal conduct, misuse of confidential information that causes damages, or *ultra vires* acts; *provided, however,* notwithstanding the foregoing, nothing in the Plan shall be deemed to release or exculpate Deloitte & Touche in connection with claims arising out of or related to Deloitte & Touche's alleged failure to detect or disclose material weaknesses in internal controls, accounts payable reconciliation procedures, and write-offs of accounts payable for each of the fiscal years 1997 through 2002. Nothing in section 10.06 of the Plan or this Order shall limit the liability of the professionals of the Debtors, the Reorganized Debtors, the Postpetition Lenders, the Creditors' Committee, or the Equity Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

62. <u>Avoidance Actions</u>. Pursuant to Section 10.07 of the Plan, from and after the Effective Date, the Reorganized Debtors shall have the right to prosecute any avoidance or equitable subordination or recovery actions under sections 105, 502(d), 510, 542, 543, 544(a) (to the extent the applicable law referenced therein contemplates "actual fraud"), 545, 546, 548(a)(1)(A), 549 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession. The Reorganized Debtors shall not retain the right to prosecute any Avoidance Actions under sections 544(a) (to the

extent the applicable law referenced therein contemplates "constructive fraud"), 547, or 548(a)(1)(B) of the Bankruptcy Code.

63.     <u>Retention of Causes of Action/Reservation of Rights</u>.  Except as limited by Section 10.07 of the Plan or this Order, nothing contained in the Plan or this Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of the estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (a) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Reorganized Debtors, their officers, directors, or representatives, (b) the turnover of any property of the Debtors' estates, and (c) Causes of Action against current or former directors, officers, professionals, agents, financial advisors, underwriters, lenders, or auditors relating to acts or omissions occurring prior to the Commencement Date; *provided, however,* that the Reorganized Debtors shall not retain the right to prosecute any Causes of Action against any of the officers, directors, or employees of the Debtors that are officers, directors, or employees of the Debtors as of the Confirmation Date and such Causes of Action shall be, and shall be deemed to be, extinguished pursuant to the Plan.  Except as limited by Section 10.07 of the Plan, nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.  The Reorganized Debtors shall have, retain, reserve, and be

entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately prior to the Commencement Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted by the Reorganized Debtors after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced. Notwithstanding the foregoing, the Debtors shall not retain the right to prosecute any Causes of Action against any of the Postpetition Lenders and such Causes of Action shall be, and shall be deemed to be, extinguished pursuant to the Plan.

64. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Section 11.01 of the Plan have been satisfied or waived pursuant to Section 11.03 of the Plan. In the event that one or more of the conditions specified in Section 11.01 of the Plan have not occurred on or otherwise waived pursuant to Section 11.03 of the Plan, (a) this Order shall be vacated, (b) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained in the Plan or in this Order shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

65. <u>Retention of Jurisdiction</u>. This Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters arising in, and under, and related

to, the Chapter 11 Cases, as set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

66. <u>Effectuating Documents and Further Transactions</u>.  Pursuant to Section 13.01 of the Plan, the Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan.

67. <u>No Waiver/Discharge of Exit Facility</u>.  Notwithstanding anything else contained herein to the contrary, the terms and conditions of the Exit Facility shall be deemed in all respects to be binding and enforceable against the Reorganized Debtors.

68. <u>Withholding and Reporting Requirements</u>.  Pursuant to section 13.02 of the Plan, in connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

69.     Corporate Action.  Pursuant to Section 13.03 of the Plan, on the

Effective Date, all matters provided for under the Plan that may otherwise require

approval of the stockholders or directors of one or more of the Debtors or Reorganized

Debtors, including, without limitation, (a) the effectiveness of the Reorganized Footstar

Certificate of Incorporation, (b) the implementation of the Reorganized Director Stock

Plan or issuance of shares of Reorganized Footstar common stock thereunder, (c) the

election or appointment, as the case may be, of directors and officers of the Reorganized

Debtors, and (d) the effectiveness of the Compensation and Retention Program annexed

to the Plan as Exhibit B and the Employment Agreements annexed to the Plan as Exhibit

C shall be deemed to have occurred and shall be in effect from and after the Effective

Date pursuant to the applicable general corporation law of the states in which the Debtors

and the Reorganized Debtors are incorporated, without any requirement of further action

by the stockholders or directors of the Debtors or Reorganized Debtors.  On the Effective

Date, or as soon thereafter as is practicable, Reorganized Footstar shall, if required, file

its amended certificate of incorporation with the Secretary of State in accordance with the

applicable general corporation law.

70.     Exemption from Transfer Taxes.  Pursuant to Section 13.04 of the

Plan and section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of

notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or

other security interest, the making or assignment of any lease or sublease, or the making

or delivery of any deed or other instrument of transfer under, in furtherance of, or in

connection with the Plan, including, without limitation, any merger agreements or

agreements of consolidation, deeds, bills of sale, or assignments executed in connection

with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. Any sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Commencement Date through and including the Effective Date, including, without limitation, the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

71. <u>Payment of Statutory Fees</u>. On the Effective Date, and thereafter as may be required, the Disbursing Agent shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

72. <u>Post-Confirmation Date Professional Fees and Expenses</u>. From and after the Confirmation Date, the Debtors, Reorganized Debtors, or the Disbursing Agent shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by Reorganized Footstar, the Reorganized Debtors, the Creditors' Committee, and/or the Equity Committee, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan. Pursuant to Section 2.03 of the Plan, all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 503(b)(2), 503(b)(3),

503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (a) file their respective final applications for the allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by no later than the date that is ninety (90) days after the Confirmation Date or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable or (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors.

73. <u>Dissolution of Creditors' Committee and Equity Committee</u>. Pursuant to Section 13.07 of the Plan, the Creditors' Committee and Equity Committee shall terminate upon the Effective Date and their respective members and employees or agents (including attorneys, financial advisors, accountants, and other professionals) shall be released and discharged from any further authority, duties, responsibilities, and obligations relating to, arising from, or in connection with their service on such committees, except that the Creditors' Committee and Equity Committee may evaluate, object to (if necessary), and appear at the hearing to consider (a) applications for final allowances of compensation and reimbursement of expenses, including applications for compensation or reimbursement under section 503 of the Bankruptcy Code, and support or prosecute any objections to such applications and appeals therefrom, if appropriate, and (b) any post-Confirmation Date modifications to, or motions seeking the enforcement of, this Plan or the Confirmation Order. The post-Confirmation Date professional fees of

the Creditors' Committee and Equity Committee for the services set forth in the preceding sentence shall be paid pursuant to Section 13.06 of the Plan.

74.     Plan Supplement.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved when they are finalized, executed and delivered. Without further order or authorization of this Court, the Debtors, Reorganized Debtors and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

75.     Modifications.  Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, with the consent of the Equity Committee, are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan.

76.     Binding Effect.  Pursuant to Section 13.14 of the Plan, the Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and

Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

77.  <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

78.  <u>Surety Obligations</u>.  Nothing contained in the Plan or this Order shall release, discharge, or exculpate any entity from its obligations or liabilities as a surety for the Debtors' obligations under the customs laws and regulations of the United States.

79.  <u>United States Claims</u>.  Notwithstanding anything contained in the Plan or this Order to the contrary, nothing in the Plan or the transactions contemplated by and authorized pursuant to the Plan shall release any non-Debtor from any claims of the United States of America or its agencies or subdivisions (collectively, the "United States"), or modify, alter, impair, or in any way affect the claims and rights of the United States or the application of any laws or regulations of the United States as to any person or entity other than the Debtors.

80.  <u>Insurance Contracts.</u>  Notwithstanding any term or provision in the Plan or in this Order to the contrary, nothing in the Plan or this Order shall: (i) affect, alter, prejudice or impair any of the rights, claims and/or defenses of the Debtors and/or their affiliates or of Liberty Mutual Insurance Company and its affiliates (collectively,

"Liberty Mutual") under any of the policies, related agreements, and/or letters of credit relating to insurance coverage issued by Liberty Mutual to or for the benefit of the Debtors and/or their affiliates (collectively, the "Insurance Contracts"); (ii) affect, alter, prejudice or impair any of the terms, provisions, conditions, limitations and/or exclusions contained in the Insurance Contracts, including, without limitation, Liberty Mutual's right to handle and/or satisfy the claims of third parties arising under the Insurance Contracts, all of which shall remain unmodified and in full force and effect, subject to applicable non-bankruptcy law; or (iii) relieve Liberty Mutual, the Debtors, or the Reorganized Debtors from any of their continuing duties and obligations under the Insurance Contracts.

81.     <u>Interest Rate Payable to Holders of Allowed General Unsecured Claims</u>.  Pursuant to Section 4.04(b) of the Plan, holders of Allowed General Unsecured Claims shall receive accrued and unpaid post-Commencement Date interest on account of such Claims at the Case Interest Rate calculated through the Distribution Date.  The settlement between and among the Debtors, the Creditors' Committee and the Equity Committee regarding the appropriate Case Interest Rate is approved.

82.     <u>Notice of Entry of Confirmation Order</u>.  The Reorganized Debtors shall service notice of entry of this Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the United States Trustee for the Southern District of New York, and other parties in interest, by causing notice of entry of this Order, to be delivered to such parties by first-class mail, postage prepaid, within ten (10) business days after entry of this Order.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.

83.     Notice of Effective Date.  As soon as practicable after the

occurrence of the Effective Date, the Reorganized Debtors shall file notice of the

occurrence of the Effective Date and shall serve a copy of same on all parties entitled to

receive notice pursuant to this Court's order, dated March 3, 2004, establishing notice

procedures in the Chapter 11 Cases.

84.     Substantial Consummation.  On the Effective Date, the Plan shall

be deemed to be substantially consummated under sections 1101 and 1127 of the

Bankruptcy Code.

85.     Reversal.  If any of the provisions of this Order are hereafter

reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other

court, such reversal, modification, or vacatur shall not affect the validity of the acts or

obligations incurred or undertaken under, or in connection with, the Plan prior to receipt

of written notice of such order by the Debtors.  Notwithstanding any such reversal,

modification or vacatur of this Order, any such act or obligation incurred or undertaken

pursuant to, and in reliance on, this Order prior to the effective date of such reversal,

modification or vacatur shall be governed in all respects by the provisions of this Order,

the Plan, all documents relating to the Plan and any amendments or modifications to any

of the foregoing.

86.     Conflicts Between Order and Plan.  In the event of any

inconsistency between the Plan, or any agreement, instrument or document intended to

implement the Plan, and this Order, the provisions of this Order shall govern and shall

supersede any such document or order of this Court issued prior to the Effective Date.

The provisions of this Order are integrated with each other and are non-severable and

mutually dependent. The failure specifically to include or reference any particular provision of the Plan or any related agreement in this Order shall not diminish or impair the efficacy of such provision or such related agreements, it being understood that it is the intent of this Court that the Plan be confirmed and such related agreements be approved in their entirety.

87. <u>Final Order</u>. This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: White Plains, New York
January 25, 2006

<u>/s/ Adlai S. Hardin, Jr.</u>
UNITED STATES BANKRUPTCY JUDGE